**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert A Valenzuela,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Ruby J Farms LLC, et al.,<br><br>　　　　Defendants. | No. CV-21-00442-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is Defendants Ruby J Farms LLC, Anthony Comella, and Norma Comella's Motion to Modify the Joint Proposed Pretrial Order (Doc. 83); and Plaintiff Robert Valenzuela's Motion in Limine to Exclude Testimony of Thomas Valenzuela (Doc. 88). The motions are fully briefed. (Docs. 83, 88, 91–93.) The Court will deny Defendants' Motion and grant in part and deny in part Plaintiff's Motion.

**I.     Defendants' Motion to Amend the JPPO**

On December 23, 2022, the parties filed a Joint Proposed Pretrial Order (JPPO). (Doc. 70.) On January 27, 2023, the Court adopted the parties' JPPO and stated:

> No witness or exhibit, other than those specifically listed in the JPPO may be called at trial unless the parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice." Fed. R. Civ. P. 16(e).

(Doc. 76 at 6.) Defendants state they learned, on June 14, 2023, that Plaintiff sent text messages and photographs marketing his watermelon sale and procurement services under Tri-Val LLC. (Doc. 83 at 2.) On June 27, 2023, Defendants supplemented their disclosure and provided the screenshots of the messages and photographs to Plaintiff. (*Id.*) In their

Motion, Defendants request the Court modify the JPPO and include in the exhibit list "the Text Messages and the Accountings." (*Id.* at 4.)[1] Defendants argue they disclosed and sought to include the messages shortly after Plaintiff sent them, so Plaintiff can neither be surprised by their existence nor show Defendants acted in bad faith. (*Id.* at 3–4.) Plaintiff opposes modification of the pretrial order. (*See* Doc. 91.)

### A.     Applicable Law

"The court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). Courts look to several factors when determining whether a Court should modify a pretrial order. In *United States v. First National Bank of Circle*, the Ninth Circuit set forth a test focused on whether the *moving* party would suffer manifest injustice if the pretrial order *was not modified*. 652 F.2d 882, 887 (9th Cir. 1981). Under this test, courts consider:

> (1) the degree of prejudice to the [moving party] resulting from a failure to modify;
>
> (2) the degree of prejudice to [the non-moving party] from a modification;
>
> (3) the impact of a modification at that stage of the litigation on the orderly and efficient conduct of the case; and
>
> (4) the degree of willfulness, bad faith or inexcusable neglect on the part of the [moving party].

*Id.* The Ninth Circuit later departed from this test in *Galdamez v. Potter*, articulating a different four-factor test focused on whether the *non-moving* party would suffer a manifest injustice if the pretrial order *was modified*. 415 F.3d 1015, 1020 (9th Cir. 2005). This test requires courts to consider:

---

[1] Although Defendants request that the JPPO be amended to include "accountings," their motion does not provide any information about accountings. (*See* Doc. 83.) Accountings are not addressed by either party in the response or reply to the motion. (*See* Docs. 91, 93.) It appears that the reference to accountings was unintended. The Court's analysis thus does not address this request to add "the Accountings" exhibits. To the extent Defendants intended to include these exhibits in their request to amend the JPPO, that request is denied because Defendants have failed to provide any basis for the addition of "the Accountings" exhibits.

>   (1) the degree of prejudice or surprise to the [non-moving party] if the order is modified;
>
>   (2) the ability of the [non-moving party] to cure the prejudice;
>
>   (3) any impact of modification on the orderly and efficient conduct of the trial; and
>
>   (4) any willfulness or bad faith by the party seeking modification.

*Id.* A close examination of the two tests and Ninth Circuit caselaw suggests the four-part test in *First National Bank* more closely aligns with Rule 16(e). *McBroom v. Ethicon, Inc.*, 341 F.R.D. 40, 40–45 (D. Ariz. 2022).

**B.     Analysis**

Under either test, *First National Bank* or *Galdamez*, modification of the parties' pretrial order is unwarranted. Proceeding without modification would not cause Defendants manifest injustice because the exhibits they seek to include have little probative value. Modification of the pretrial order would also prejudice Plaintiff by limiting his trial preparation related to the exhibits or delaying trial.

Under the test in *First National Bank*, which focuses on the degree of prejudice sustained by the moving party, modification is not warranted because Defendants face only a slight degree of prejudice if the pretrial order is not modified. Defendants want to include screenshots of text messages reportedly sent by Plaintiff, marketing his ability to sell and procure watermelons, and photographs of Plaintiff and the watermelons. (Doc. 83 at 15–20.) Defendants believe the text messages were sent in June 2023. (*Id.* at 2.) According to Defendants, these exhibits would show Plaintiff, contrary to his prior assertions, is operating Tri-Val LLC. (*Id.* at 2–3.) This fact is important, argue Defendants, because Plaintiff's case-in-chief turns in part on whether Defendants contracted with Plaintiff or Tri-Val LLC in early October 2020. (*See id.*; Doc. 89 at 1–2.) Yet almost three years has passed between the October 2020 agreement and the June 2023 text messages. Because Plaintiff's operation of Tri-Val LLC in 2023 does not show that he operated it in 2020, this evidence is of little probative value. *See State v. Crawford*, 475 P.2d 515, 518 (Ariz. Ct. App. 1970) ("Proof of the existence of a present condition or state of facts does not raise

any presumption that the same facts existed at a prior date."); *Russell, Poling & Co. v. Conners Standard Marine Corp.*, 252 F.2d 167, 170 (2d Cir. 1958) ("Nevertheless, in some circumstances an inference as to the past existence of a state of facts may be proper, as where the present condition is one that ordinarily would not exist unless it had also existed at the time as to which the presumption is invoked.").[2] The exclusion of these exhibits would thus cause Defendants minimal prejudice, if any at all, rather than manifest injustice.

Modification is also not warranted under the test in *Galdamez*, which focuses on the degree of prejudice sustained by the non-moving party. Although the Court finds no bad faith on Defendants' part, the remaining factors (degree of prejudice, ability to cure prejudice, and impact on trial) all favor disallowing modification. Granting Defendants' request to include the screenshots and photographs would prejudice Plaintiff because he has not had the opportunity to depose the third parties involved in the conversations and explore the context of the unauthenticated images prior to trial. (*See* Doc. 91 at 6.) In the Reply they filed three weeks before trial, Defendants suggest Plaintiff could still depose these third-party individuals and Defendants could call them at trial. (Doc. 93 at 4.) This could cure the prejudice caused by Plaintiff's inability to include these exhibits in his trial preparation. It is too late, however, to schedule additional depositions before trial. Attempts to cure prejudice by conducting additional discovery would only result in more prejudice by delaying Plaintiff's trial. Similarly, modifying the pretrial order and permitting last-minute depositions (to cure the prejudice caused by modification) would delay and disrupt the orderly and efficient conduct of the trial.

Pretrial orders play a crucial role in securing "the just, speedy, and inexpensive determination of every action." *See First Nat. Bank of Circle*, 652 F.2d at 886; Fed. R. Civ. P. 1. Disregard for the finality of pretrial orders encourages trial by ambush rather than timely trial preparation. *First Nat. Bank of Circle*, 652 F.2d at 886. At some point, a case

---

[2] For the same reason, even assuming Defendants could authenticate these exhibits at trial, Rule 403 would require their exclusion. *See* Fed. R. Evid. 403. Any probative value of these exhibits is substantially outweighed by their tendency to waste time and unnecessarily distract from the 2020 agreement at issue in this case.

- 4 -

ready for trial must proceed to trial. Plaintiff may market his services under Tri-Val LLC in the future and, in doing so, provide an indefinite source of potential evidence which Defendants might wish to use at trial. The issues in this case, however, center on an agreement from October 2020.[3] The parties (and the Court) have invested substantial time and effort in preparation for a trial on the nature of that agreement. Delaying the parties' trial to allow for last-minute depositions and exhibits neither promotes the interests of justice nor the efficient adjudication of this action.[4]

## II. Plaintiff's Motion in Limine

In his Motion in Limine, Plaintiff requests the Court exclude the testimony of his brother Thomas Valenzuela. (Doc. 88 at 1.) Plaintiff advances three arguments in support of excluding or, in the alternative, limiting Valenzuela's testimony: (1) Defendants failed to timely disclose Valenzuela as a lay witness; (2) Federal Rule of Evidence 608(b) prohibits Valenzuela from testifying about specific acts; and (3) Valenzuela's employment-related testimony is irrelevant or far outweighed by its danger of unfair prejudice, jury confusion, and waste of time. (Doc. 88 at 3–5.) The Court will address each argument.

### A. Timeliness

Generally, a party must timely disclose witnesses it "may use to support its claims

---

[3] The Court does recognize that, depending on Plaintiff's testimony, the fact of Tri-Val LLC's 2023 operations could become relevant to Plaintiff's credibility. Should Defendants believe that such circumstances exist, they may raise the issue and request permission to question Plaintiff about Tri-Val LLC's 2023 operations.

[4] Defendants argue "the JPPO should not be held to the high standard found in [Rule 16(e)] which only applies to final pretrial orders that occur after a final pretrial conference." (Doc. 83 at 4.) Defendants point out that the Court adopted the JPPO before the final pretrial conference. (*Id.* at 2, 4.) Considering the limited probative value of the text messages and photographs, the Court concludes delaying trial to modify the pretrial order would not be warranted even under the less stringent standards of Rules 1 and 16(d). *See* Fed. R. Civ. P. 1 ("These rules . . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); Fed. R. Civ. P. 16(d) ("After any conference under this rule, the court should issue an order reciting the action taken. This order controls the course of the action unless the court modifies it.").

or defenses, ***unless the use would be solely for impeachment***." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). Failure to disclose a witness under Rule 26(a) results in the exclusion of the witness at trial unless the failure to disclose was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Plaintiff argues Defendants' disclosure of Valenzuela was untimely because Defendants disclosed Valenzuela months after the deadline to disclose lay witnesses and just weeks before the end of discovery. (Doc. 88 at 3–4.) Defendants argue their disclosure of Valenzuela was not untimely because they intend to proffer his testimony "solely for the purpose of impeachment." (Doc. 92 at 4.) Valenzuela may thus testify but only for impeachment purposes. *See* Fed. R. Civ. P. 26(a)(1)(A)(i).

### B.  Specific-Act Testimony

Under Rule 608(a) of the Federal Rules of Evidence, a party may call a witness to attack another witness's credibility with testimony on the other witness's character for untruthfulness. The character witness may testify about his or her opinion that the other witness has an untruthful character or the other witness's reputation for untruthfulness. Fed. R. Evid. 608(a). Although extrinsic evidence of specific acts are prohibited, the court may allow a character witness to testify on cross-examination about specific acts:

> **Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness; or
>
> (2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). On direct examination, the character witness is barred from giving testimony about specific acts; instead, the character witness should describe the basis for his or her opinion in a general manner that does not violate Rule 608(b). *See United States v. Murray*, 103 F.3d 310, 322 (3d Cir. 1997); 28 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6117 (2d ed. 2023).

Defendants state they intend to ask Valenzuela about Plaintiff's character for truthfulness. (Doc. 92 at 2.) This is permitted by Rule 608(a). However, under Rule 608(b), Valenzuela must not testify about any specific acts during direct examination. The Court may permit such inquiries, if probative, during Plaintiff's cross-examination of Valenzuela.

### C.     Employment-Related Testimony

Defendants' disclosure states Thomas Valenzuela will testify about "his experiences working for Ruby J. Farms as an employee." (Doc. 88-1 at 2.) Plaintiff argues this testimony is not relevant because Valenzuela's work for Ruby J. Farms did not begin until long after Plaintiff's work with Ruby J. Farms ended. (Doc. 88 at 6.) Alternatively, Plaintiffs argue any minimal relevance of this testimony is far outweighed by the risk of unfair prejudice, confusion, and waste of time which would result from focusing on a different person's employment relationship with Ruby J. Farms during a different time frame. (*Id.* at 6–7.)

Defendants assert Plaintiff will testify that he was an employee of Ruby J. Farms even though he lacked an agreement that he was an employee and did not expect compensation until he made a sale. (Doc. 92 at 2–3.) According to Defendants, Valenzuela will testify that Ruby J. Farms hired him under an agreement that he was an employee, asked him to fill out a W-2 form, and paid him on its regular payroll schedule. (*Id.* at 3.) Defendants argue it will offer Valenzuela's testimony for impeachment purposes, suggesting the comparison between the two brother's work relationships with Ruby J. Farms undermines the credibility of Plaintiff's testimony that he was an employee. (*Id.*)

Impeachment evidence is offered to discredit a witness and reduce the effectiveness of the witness's testimony by showing why the factfinder should not trust it. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993); 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.22 (3d ed. 2023). Parties may impeach a witness with character evidence; inconsistent statements; evidence of bias; evidence showing the witness lacks the capacity to perceive, recall, or narrate facts; and, finally, evidence contradicting the substance of the witness's testimony. *See United States v. Collicott*, 92

F.3d 973, 980 n.5 (9th Cir. 1996); *United States v. Lindemann*, 85 F.3d 1232, 1243 (7th Cir. 1996), *cert. denied*, 519 U.S. 966 (1996). A party offers evidence for impeachment by contradiction to prove a *fact* to which a witness testified is not true. *See* 27 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6096 (2d ed. 2023).

Here, the testimony Defendants seek to solicit suggests a *legal* conclusion: Plaintiff was not an employee because his employment experience differed from his brother's experience as an employee. Indeed, Thomas Valenzuela's proposed testimony does not tend to prove false Plaintiff's statements that he lacked an agreement that he was an employee and did not expect compensation until he made a sale. Nor does Valenzuela's proposed testimony prove false Plaintiff's subjective belief that he was an employee. Valenzuela's onboarding process occurred after Plaintiff left Ruby J. Farms, so Plaintiff would not have had the opportunity to compare their onboarding experiences when forming his subjective belief about whether he was an employee. Valenzuela's proposed testimony contradicts the legal conclusion Plaintiff asks the Court to reach about his relationship with Ruby J. Farms but does not contradict the facts Plaintiff will testify about. Valenzuela's proposed employment-related testimony thus falls outside the scope of impeachment evidence and must be excluded.

Further, to the extent this testimony is relevant for its substantive value rather than impeachment purposes, it must still be excluded. Testimony with substantive value must be disclosed and does not fall under Rule 26(a)'s exception for impeachment evidence. *See Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 204 (5th Cir. 2016) (collecting cases); *Mort v. DeJoy*, No. 1:19-CV-0652-JLT-SKO, 2022 WL 14129778, at *1 (E.D. Cal. Oct. 24, 2022) (same). Evidence is substantive if it is offered to establish the truth of a matter to be determined by the factfinder. *Chiasson*, 988 F.2d at 517; Moore et al., *supra*, § 26.22. Because Valenzuela may testify only for the purpose of impeachment, his testimony that is substantive in nature must be excluded. *See Olivarez*, 844 F.3d at 204; *Mort*, 2022 WL 14129778, at *1.

//

**III.   Conclusion**

Accordingly,

**IT IS ORDERED:**

1. Defendants' Motion to Modify the Joint Proposed Pretrial Order (Doc. 83) is **denied**.

2. Plaintiff's Motion in Limine to Exclude Testimony of Thomas Valenzuela (Doc. 88) is **granted in part** and **denied in part**, consistent with this Order. Thomas Valenzuela may testify at trial for the purpose of impeachment regarding Plaintiff's character for truthfulness. Defendants must not solicit testimony from Valenzuela about specific acts or his employment with Ruby J. Farms.

Dated this 7th day of August, 2023.

Jennifer G. Zipps
United States District Judge