**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert A Valenzuela,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Ruby J Farms LLC, et al.,<br><br>　　　　　　Defendants. | No. CV-21-00442-TUC-JGZ<br><br>**ORDER AND JUDGMENT** |

This case involves a dispute over the nature of the work relationship of Plaintiff Robert Valenzuela and Defendants Ruby J Farms LLC (RJF) and Anthony Comella. Valenzuela alleges Defendants owe him unpaid compensation and wages; RJF alleges Valenzuela wrongfully kept possession of a Rolex watch owned by RJF. The Court held a jury trial on August 21–24, 2023. Prior to trial, the parties stipulated to the Court determining the nature of Valenzuela's work relationship with Defendants. (Doc. 86-2.) This stipulation required the Court to decide whether Valenzuela and Defendants had an employer-employee relationship under the Arizona Wage Act, Arizona Minimum Wage Act, and Fair Labor Standards Act. (*See id.*)

This Order sets forth the Court's findings of fact and conclusions of law. The Court designates its findings of fact as "Findings," its conclusions of law as "Conclusions," and mixed questions of fact and law as "Findings and Conclusions." The Court based its decision on all of the testimony and exhibits admitted during trial and the Court's evaluation of the witnesses' credibility.

## I. Findings

Around September 2020, Valenzuela responded to RJF's avocado salesman job posting. After this job application, Valenzuela met in person with Anthony Comella, informed Comella that he did not want to sell avocadoes, and proposed bringing a watermelon program to RJF. Valenzuela and Anthony Comella reached an oral agreement regarding work Valenzuela would perform for RJF. This agreement was never articulated in writing. Around October 2020, Valenzuela began performing work for RJF and Comella related to the procurement and sale of watermelons. RJF is a business that primarily brokers produce deals. The parties also stipulated to the following facts about RJF and Comella:

> a. At all relevant times, Anthony J. Comella managed Ruby J. Farms, LLC, acted as its chief executive officer, exercised significant economic control over Ruby J. Farms, LLC, and was the decision-maker with respect to all actions by the company that are at issue.
>
> b. Mr. Comella is the Trustee of the Comella Family Trust, the sole owner of the Ruby J. Farms, LLC, and therefore exercises substantial economic and other control over the company in that role as well.

(Doc. 70 at 7.)

At the time of Valenzuela and Comella's agreement, RJF did not have any employees selling watermelons. Valenzuela had decades of experience selling or procuring watermelons. At RJF, Valenzuela's title was Director of Sales and Procurement. RJF provided Valenzuela with a company business card, email address, and credit card. RJF updated its information with Blue Book Services, which listed Valenzuela as connected with the company in October 2020. RJF and Comella did not provide Valenzuela with a company vehicle. Valenzuela charged some work-related expenses to his company credit card and paid for other expenses out of pocket, which he expected RJF to reimburse him for at a later time. Comella allowed Valenzuela to use RJF employees and contractors in the course of his work. Comella also hired additional employees recommended by Valenzuela to support the watermelon program.

Valenzuela and Comella agreed Valenzuela would be compensated purely on

commission; Valenzuela would not receive a salary or hourly wage. Throughout the duration of his work relationship with RJF, Valenzuela received at least one 1099 Form and nine checks from RJF. RJF issued these checks for draws on Valenzuela's commissions and expense reimbursements. All checks were made out to Valenzuela's company, Tri-Val LLC. Valenzuela did not request and receive the draws on his commission until he believed he had earned his commission and RJF began receiving revenue for the watermelons he sold.

During the first watermelon project, Valenzuela traveled extensively for work. RJF and Comella did not regularly tell Valenzuela what hours to work, where to travel for business, or what growers or buyers to call or visit. Comella provided Valenzuela with directions for negotiations with growers and instructed Valenzuela not to complete certain tasks related to the watermelon program. Valenzuela worked exclusively for RJF and Comella and conducted no other business deals outside his work for them. RJF and Comella directed Valenzuela to execute contracts with growers in Mexico on behalf of RJF. RJF provided Valenzuela with the contract forms. Comella had final decision-making authority on all contracts and any advances paid to growers. Comella also instructed Valenzuela to complete specific tasks related to produce deals outside the watermelon program.

The first project in the watermelon program ended around May 2021 when Valenzuela no longer had watermelons to procure or sell. Comella knew this and asked Valenzuela to work on RJF's Yuma-based watermelon project. Comella also asked Valenzuela to invest money in this project. Valenzuela agreed to work on the project but declined to invest any money in it. While working on the project, Valenzuela temporarily relocated to Yuma and rented an apartment there. Comella knew this, approved of it, and communicated regularly with Valenzuela. When in Yuma, Valenzuela worked at the farms which RJF had partnered with to grow the watermelons and RJF's warehouse space.

Comella personally supervised Valenzuela's work on the Yuma project. Comella

instructed Valenzuela to increase acreage, order seed, wait until specific times to sell watermelons, communicate messages to other RJF workers, stop hiring trucks, stop selling to a specific buyer, and provide Comella with daily updates. Comella also directed Valenzuela on what to say and how to interact with a customer and a grower. On June 25, 2021, Comella dictated an email sent by Kara Garcia, which provided Valenzuela with specific procedures to follow for the Yuma project. Comella also personally told Valenzuela he would terminate their work relationship if Valenzuela refused to do things the way Comella liked them done. On September 1, 2023, at the end of the Yuma project, Comella sent an email to Valenzuela expressing Comella's intention to continue working with Valenzuela. At least two RJF employees who worked with Valenzuela believed Valenzuela was a RJF employee.

## II.     Findings and Conclusions

RJF and Comella exercised significant authority over the manner in which Valenzuela worked by controlling Valenzuela's advances to growers in Mexico, contract execution, activities in Yuma, and interactions when representing RJF. Valenzuela's occupation procuring and selling watermelons involved a substantial degree of unique experience and skill. Valenzuela's occupation was an integral part of Comella and RJF's business: Valenzuela was RJF's Director of Sales and Procurement, RJF's only watermelon salesperson, and the primary individual updating Comella from Yuma. RJF and Comella supplied most of Valenzuela's materials and place of work by providing Valenzuela with contract templates, investment capital for all projects, employees and helpers to assist Valenzuela, a company credit card, a company email address, a desk in RJF's Nogales office, and warehouse space in Yuma. The duration of employment was open-ended and had a moderate degree of permanence. The pure commission-based method in which Valenzuela received payment provided him with an opportunity for significant profit and loss depending upon his managerial skill. Comella did not believe Valenzuela was an employee of RJF or Comella. Even so, Comella and RJF exercised significant control over the manner in which Valenzuela worked. This is consistent with

the community belief as expressed by other RJF employees, who believed Valenzuela was in fact an employee.

### III. Conclusion

Valenzuela asserts claims under the Arizona Wage Act (AWA), Arizona Minimum Wage Act (AMWA), and Fair Labor Standards Act (FLSA). (Doc. 70 at 1–2.)

#### A. AWA and AMWA Claims

Valenzuela has met his burden of showing he was an employee of RJF under the AWA and an employee of RJF and Comella under the AMWA. Arizona courts consider a variety of factors when determining whether a person was an employee, including:

1. The extent of control exercised by the master over details of the work and the degree of supervision;
2. The distinct nature of the worker's business;
3. Specialization or skilled occupation;
4. Materials and place of work;
5. Duration of employment;
6. Method of payment;
7. Relationship of work done to the regular business of the employer;
8. Belief of the parties.

*Santiago v. Phoenix Newspapers, Inc.*, 794 P.2d 138, 142 (Ariz. 1990). In addition to these nonexhaustive factors, Arizona courts also consider community belief and custom. *See id.* at 145 (citing *Restatement (Second) of Agency* § 220 cmt. h (Am. L. Inst. 1958)). All factors favor finding Valenzuela an employee except for the skilled-occupation, method-of-payment, and belief-of-the-parties factors. The factors taken together and the economic reality of the circumstances, including Comella's substantial extent of control and threat to terminate Valenzuela if he did not follow Comella's directions, support the finding of an employer-employee relationship.

Further, Comella and RJF fall under the AMWA's broad definition of employer. *See* A.R.S. § 23-362(B) ("'Employer' includes any . . . individual or other entity acting

directly or indirectly in the interest of an employer in relation to an employee."). Because of the AWA's narrower definition of an employer, only RJF is an employer of Valenzuela under the AWA. *See* A.R.S. § 23-350(3) ("'Employer' means any individual . . . employing any person."); *Rosen v. Fasttrak Foods LLC*, No. CV-19-05292-PHX-DWL, 2021 WL 2981590, at *5 (D. Ariz. July 15, 2021) ("The term 'employer' is defined much more narrowly under AWA than it is under the FLSA or AMWA."); *Channel v. Home Mortg., Inc.*, No. CV 03-00100-PHX-ROS, 2005 WL 8160525, at *5 (D. Ariz. Sept. 21, 2005) ("There is nothing in [the AWA's definition of employer] suggesting that where an 'employer' is a corporation, the definition is intended to encompass both the corporation and individual employees within the corporation authorized to set an employee's hours and pay wages.").

### B. Fair Labor Standards Act

Valenzuela has met his burden of showing he was an employee of RJF and Comella under the FLSA. Under the FLSA, courts consider the following factors when determining whether an individual is an employee:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; and
>
> 6) whether the service rendered is an integral part of the alleged employer's business.

*Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). All factors favor finding Valenzuela an employee except for the opportunity-for-profit and special-skill factors. The economic reality of these circumstances, including Comella's ability to terminate Valenzuela and his control over the manner in which Valenzuela worked, support a finding that RJF and Comella had an employer-employee relationship with

Valenzuela. *See Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991) (existence of an employer-employee relationship turns on whether the alleged employer could hire and fire the employee, supervised and controlled the employee, determined payment, and maintained employment records); *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) ("Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the [FLSA].").

Dated this 24th day of August, 2023.

_____
Jennifer G. Zipps
United States District Judge