**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert A Valenzuela,<br><br>    Plaintiff,<br><br>v.<br><br>Ruby J Farms LLC, et al.,<br><br>    Defendants. | No. CV-21-00442-TUC-JGZ<br><br>**ORDER AND JUDGMENT** |

    Plaintiff Robert Valenzuela filed this action against Defendants Ruby J Farms LLC (RJF) and Anthony and Norma Comella, alleging wage and overtime violations under the Arizona Wage Act (AWA), Arizona Minimum Wage Act (AMWA), and Fair Labor Standards Act (FLSA). (Doc. 1). RJF filed a counterclaim for conversion against Valenzuela, alleging Valenzuela wrongfully took possession of RJF's Rolex watch. (Doc. 8 at 6–9.) Prior to trial, the parties stipulated to the Court determining the nature of Valenzuela's work relationship with Defendants. (Doc. 86-2.) The Court determined that Valenzuela was an employee of RJF under the AWA and an employee of RJF and Anthony Comella under the AMWA and FLSA. (Doc. 107 at 5–6.)

    This action was tried before a jury from August 21 to 25, 2023. For the AWA claim, the jury determined that RJF failed to pay Valenzuela amounts promised to him in breach of the parties' contract, the amount RJF failed to pay was $6,953.97, this entire amount was compensation for Valenzuela's services which Valenzuela had a reasonable expectation to be paid, and RJF did not have a good-faith basis for withholding payment.

(Doc. 122.) For the AMWA claim, the jury determined that RJF and Comella failed to pay Valenzuela at least $12.15 per hour for any hours worked after May 31, 2021, and that RJF and Comella owed Valenzuela $6,366.60 in minimum wage. (Doc. 123.) For the FLSA claim, the jury determined that RJF and Comella failed to pay Valenzuela 1.5 times his regular rate for overtime hours worked and owed Valenzuela $2,223.45 in overtime pay. (Doc. 124.) For the conversion counterclaim, the jury determined that RJF owned the Rolex watch, Valenzuela knowingly and intentionally controlled the watch in a manner that seriously interfered with RJF's right to control it, and RJF suffered damages in the amount of $15,000. (Doc. 125.)

The parties stipulated to the Court determining (if Valenzuela prevailed on his wage claims) whether Valenzuela was entitled to treble damages or additional remedies. (Doc. 86-2 at 2, 4–5.) The parties also stipulated to the Court resolving post-trial Valenzuela's equitable defenses to RJF's conversion counterclaim. (*Id.* at 5–6.) Pending before the Court are Valenzuela's Post-Trial Brief for Additional Remedies (Docs. 127, 132, 134) and Valenzuela's Motion for Additional Findings, Conclusions, and Judgment Regarding Equitable Defenses to the Conversion Counterclaim (Docs. 128, 131, 133). The Court will address each in turn.

**I.      Additional Remedies for Valenzuela's Wage Claims**

In his post-trial brief, Valenzuela requests the Court award treble damages and pre- and post-judgment interest for the AWA and AMWA claims, and liquidated damages and post-judgment interest for the FLSA claim. (Doc. 134 at 8–9.) Defendants raise two issues with respect to Valenzuela's requests: (1) whether the damages the jury awarded under the AMWA and FLSA duplicated the damages awarded under the AWA; and (2) whether Valenzuela is entitled to treble damages on $24,050 in compensation RJF paid to Valenzuela during the litigation. (Doc. 132 at 1–2, 4–5, 7.) For the following reasons, the Court will grant Valenzuela his requested relief and rule in his favor as to both issues.

//

//

### A. Duplication of Damages

The jury plays a vital role in our civil justice system. *Soto v. Sacco*, 398 P.3d 90, 93 (Ariz. 2017). A trial court must neither substitute its judgment for the jury's, *id.*, nor reweigh the evidence because the court feels other results are more reasonable, *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35 (1944). If a jury's verdict is "within the limits of the evidence," the trial court should not reduce it. *See In re Est. of Hanscome*, 254 P.3d 397, 401 (Ariz. Ct. App. 2011); *see also Kaffaga v. Est. of Steinbeck*, 938 F.3d 1006, 1013 (9th Cir. 2019) ("We must avoid reversing a jury verdict for lack of evidence or alleged double recovery if the verdict is capable of a 'correct interpretation' that is not illegal, and if the verdict is not 'hopelessly ambiguous.'").

Defendants argue the Court should not enter judgment for the damages the jury awarded under the AMWA and FLSA because those damages duplicate the damages the jury awarded under the AWA. (Doc. 132 at 2.) Defendants argue that Jury Verdict Form 1, for the AWA claim, required the jury to state the "total amount of unpaid wages due Valenzuela." (*Id.* at 3.) The damages awarded by the jury for the AWA claim, argue Defendants, represent **all** wages owed to Valenzuela under the parties' commission agreement, including any Yuma commissions, minimum wages, and overtime pay. (*Id.*) Defendants thus contend the Court should not aggregate the damages awarded by the jury for the AWA, AMWA, and FLSA claims. (*Id.* at 4.) Instead, Defendants ask the Court to enter judgment in the amount of the highest single award and calculate liquidated damages based only on that award. (*See id.*)

The jury's damages award for Valenzuela's AWA claim need not encompass the damages for his other claims. This dispute turns on whether the jury included any compensation for the Yuma project when calculating damages for the AWA claim— compensation that would naturally offset any minimum wage owed to Valenzuela for his work in Yuma. (Docs. 132 at 2; 134 at 4.) For example, in theory, the jury's award of $6,953.97 for the AWA claim could have consisted of only unpaid Yuma commissions. If so, the damages for the AWA claim would encompass the $6,366.60 in minimum wage

- 3 -

damages, which the jury awarded Valenzuela for the summer he worked in Yuma. Awarding both amounts, in this example, would result in a double recovery for Valenzuela. But there is no conclusive evidence to establish which commissions from which projects or time periods the jury included when calculating damages under the AWA. The parties' stipulated verdict forms did not request this finding and, accordingly, the jury did not provide it.

Even so, the parties' closing arguments and the jury's findings suggest that the jury did not include the Yuma commissions in the damages it awarded under the AWA. During closing argument, Valenzuela argued that the jury should calculate minimum wage owed based on his hours worked in Yuma and a minimum wage rate of $12.15 per hour, *less any compensation Defendants paid him for his work during the summer*. The jury appeared to agree and awarded Valenzuela minimum wage for the summer of 2021.[1] The jury's decision to compensate Valenzuela $12.15 per hour for the entire summer in Yuma suggests the jury could have determined that Defendants did not pay Valenzuela for any of his work in Yuma and that the $30,000 Defendants did pay him during the summer was actually compensation owed for past work.

Further, Valenzuela argued at closing that if the jury determined there was *no promise* of compensation for the Yuma project, then it should use the *minimum wage rate* as the regular rate for the purpose of calculating overtime pay. The jury apparently agreed and found that Defendants owed Valenzuela overtime wages based on a time-and-a-half multiplier of $12.15 per hour.[2] The jury's use of the *minimum wage rate* as Valenzuela's regular rate suggests the jury determined there was *no promise* as to compensation for the Yuma project. The AWA verdict form, however, asked the jury to determine the amount RJF *promised* to Valenzuela but failed to pay him. (*See* Doc. 122 at 2.) Taken together, it

---

[1] The jury awarded Valenzuela $6,366.60 in minimum wage. (Doc. 123.) This amount, divided by $12.15, equals 524 hours worked, or roughly 40 hours a week for the 13-week summer in Yuma.

[2] The jury awarded Valenzuela overtime pay in the amount of $2,223.45, (Doc. 124), which equals $12.15 multiplied by 1.5 (an $18.225 overtime rate) multiplied by 122 hours.

is possible the jury reasonably determined there were no promised wages or commissions for the Yuma project and thus excluded the Yuma project when calculating damages under the AWA. If the jury excluded the Yuma project, then neither the minimum wage damages nor the overtime damages duplicate the damages the jury awarded for the AWA claim.[3]

The cases Defendants cite are inapposite. In *Esser*, the plaintiff alleged wage claims based on the defendants' failure to pay wages for a discrete three-week period. *Valenzuela v. Esser*, No. CV 22-01180-PHX-CDB, 2023 WL 2815548, at *7 (D. Ariz. Mar. 14, 2023), *report and recommendation adopted*, No. CV 22-01180-PHX-CDB, 2023 WL 2814078 (D. Ariz. Apr. 6, 2023). Similarly, in *Grabda* and *Sao*, the plaintiffs alleged unpaid wages from discrete, one-week periods. *Grabda v. IMS Acquisition LLC*, No. CV 20-00117-TUC-MSA, 2020 WL 5544366, at *3 (D. Ariz. Sept. 16, 2020); *Sao v. Pro-Tech Prod. Inc.*, No. CV 19-05261-PHX-JJT, 2019 WL 6909566, at *1 (D. Ariz. Dec. 19, 2019). Unlike the discrete work periods in *Esser*, *Grabda*, and *Sao*, Valenzuela had no single work period relevant to all of his wage claims. The verdict forms for the AWA and FLSA claims did not limit the jury's damages calculations to any timeframe, (Docs. 122, 124), while the verdict form for the AMWA claim limited the jury's damages calculation to "hours worked after May 21, 2021," (Doc. 123). Valenzuela's wage claims spanned nearly a year and the relevant time periods for his work projects could—but did not need to—overlap.

For these reasons, no conclusive evidence demonstrates that the jury's damages awards provided Valenzuela with a double recovery. To be sure, the parties' verdict forms leave some uncertainty. Yet, if Defendants were concerned about the risk of double recovery, they could have requested more detailed verdict forms and jury instructions. *See Maxwell v. Aetna Life Ins. Co.*, 143 Ariz. 205, 217, 693 P.2d 348, 360 (Ariz. Ct. App. 1984) ("If [defendant] desired to minimize the risk of double recovery it could have requested the judge to properly and clearly instruct the jury on what basis it could award damages."). The jury's verdicts on each of Valenzuela's wage claims were reasonable and "within the limits

---

[3] If the jury excluded minimum wage damages from the summer in Yuma when calculating the damages for the AWA claim, then it likely excluded any overtime wages based on hours Valenzuela worked at minimum wage.

of the evidence," and thus should not be disturbed. *See In re Est. of Hanscome*, 254 P.3d at 401.

### B. Treble Damages for Compensation Paid During Litigation

On or about September 1, 2021, Valenzuela left his employment with RJF. (*Cf.* Doc. 107 at 4 (finding that RJF's Yuma project ended around September 1, 2021).) On October 29, 2021, Valenzuela filed this action. (Doc. 1.) In May 2022, RJF made a payment to Valenzuela in the amount of $24,050. (Docs. 127 at 4; 132 at 5–6.) At trial in August 2023, the jury found that RJF owed Valenzuela an additional $6,953.97 in unpaid wages under the AWA. (Doc. 122.) In his Motion, Valenzuela requests the Court award treble damages on both the $24,050 RJF paid seven months into litigation and the $6,953.97 the jury awarded at trial. (Doc. 127 at 4.) Arizona law provides, "If an employer, in violation of [the AWA], fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages." Ariz. Rev. Stat. § 23-355(A). The legislature included the treble damages provision in the AWA to punish employers who force their employees to resort to the courts in an unreasonable wage dispute. *Wood v. Nw. Hosp., LLC*, 473 P.3d 729, 739 (Ariz. Ct. App. 2020).

RJF argues the Court should exercise its discretion by not awarding treble damages because such an award "creates a perverse incentive to *avoid* attempts to resolve claims." (Doc. 132 at 5.) That is, RJF implies that an award of treble damages would penalize it for attempting to settle this matter during litigation. In taking this position, RJF suggests that it had only two choices: pay $24,050 in an attempt to resolve the parties' dispute mid-litigation or offer nothing and proceed with trial. The jury, however, determined that RJF had no good-faith basis to withhold wages. (Doc. 122.) Therefore, each of RJF's proposed options involve an unreasonable delay in RJF's payment of wages. RJF did not pay the $24,050 until nearly *seven months* into litigation and the jury's verdict arrived almost *two years* after Valenzuela's separation from RJF.

RJF did not have to choose between paying wages seven months late and two years

late. RJF had a third option: timely pay Valenzuela the wages it owed him. Had it selected this option, there would have been no delay or cause for treble damages. Indeed, Valenzuela and Comella testified at trial that Valenzuela agreed to resolve this dispute for $20,000 when he left RJF on September 1, 2021. But RJF rejected his offer and chose to withhold those wages from him for over seven months, compelling him to resort to litigation. The Court will therefore award Valenzuela treble damages for the $24,050 payment and the $6,953.97 which the jury awarded at trial. *See Wood*, 473 P.3d at 739.

## II.     Equitable Defenses to the Conversion Counterclaim

At trial, the jury determined that RJF owned the Rolex watch and Valenzuela knowingly and intentionally controlled the watch in a manner that seriously interfered with RJF's right to control it, causing RJF to suffer $15,000 in damages. (Doc. 125.) Valenzuela requests, under Rule 52 or, alternatively, Rule 59(e) of the Federal Rules of Civil Procedure, that the Court enter additional findings, conclusions, and judgment in his favor as to RJF's conversion counterclaim. (Doc. 128 at 3.) In support, Valenzuela advances two equitable defenses: estoppel and waiver. (*Id.* at 3–4.)

For issues tried before the Court, the Court must find the facts and state its conclusions of law separately. Fed. R. Civ. P. 52(a)(1). A party may also file a motion to alter or amend a judgment no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). This Order sets forth the Court's findings of fact and conclusions of law. The Court designates its findings of fact as "Findings" and its conclusions of law as "Conclusions." The Court bases its decision on all of the testimony and exhibits admitted during trial and the Court's evaluation of the witnesses' credibility. For the following reasons, the Court concludes that Valenzuela has not established the defenses of equitable estoppel and waiver. The Court will therefore deny Valenzuela's Motion for Judgment under Rule 52 and Motion to Alter or Amend Judgment under Rule 59.

### A.     Findings

In January 2021, RJF allowed Valenzuela to possess its Rolex watch. In March 2021, Valenzuela made a $200 purchase for additional links for the watch wristband. In

October 2021, Comella asked Valenzuela to return RJF's watch. At trial, the jury found that RJF owned the watch and Valenzuela knowingly and intentionally controlled it in a manner that seriously interfered with RJF's right to control it.[4] (Doc. 125.)

### B.   Conclusions

There are three elements of equitable estoppel:

(1) affirmative acts inconsistent with a claim afterwards relied upon;

(2) action by a party relying on such conduct; and

(3) injury to the party resulting from a repudiation of such conduct.

*Tucson Elec. Power Co. v. Ariz. Dep't of Revenue*, 851 P.2d 132, 141 (Ariz. Ct. App. 1992). Valenzuela argues that RJF committed affirmative acts inconsistent with its conversion counterclaim and that he relied upon RJF's acts to his own detriment. (Doc. 128 at 3.) More specifically, Valenzuela argues that Comella gave him the watch without telling him it was not a gift but a loan and did not ask for the watch back for nine months. (*Id.*) Valenzuela also argues he relied on these actions and purchased $200 in additional links for the watch. (*Id.*) In light of the factual findings, Valenzuela's arguments are unpersuasive

Comella's decision to wait nine months to request the return of the watch is not inconsistent with his testimony that the watch was a loan. An owner of expensive property—like a Rolex watch—does not necessarily forfeit his rights to the property by waiting nine months to request its return. And given the value of the watch, which the jury marked at $15,000, (Doc. 125), Valenzuela's purchase of $200 links does not render this decision inequitable. Valenzuela's reliance on Comella's actions and subsequent purchase of links worth about 1% of the watch did not significantly and detrimentally change his position. Similarly, to establish waiver, a party must present evidence of acts inconsistent with an intent to assert its rights. *Jones v. Cochise Cnty.*, 187 P.3d 97, 104 (Ariz. Ct. App.

---

[4] To the extent Valenzuela asks the Court to alter or amend the jury's finding on this factual issue, the Court declines to do so because the jury's factual determination was "within the limits of the evidence," *see In re Est. of Hanscome*, 254 P.3d at 401, and the Court should not reweigh evidence even if it feels other results are more reasonable, *Tennant*, 321 U.S. at 35.

2008). Valenzuela's possession of the watch for nine months, as discussed above, is not inconsistent with RJF's asserted right to the watch. Valenzuela has thus not proven his equitable defenses of estoppel or waiver.

### III.   Conclusion

Accordingly,

**IT IS ORDERED** that Valenzuela's Request for Additional Remedies (Doc. 127) is **granted,** consistent with this Order. Valenzuela's Motion for Additional Findings, Conclusions, and Judgment Regarding Equitable Defenses to Conversion Counterclaim (Doc. 128) is **denied**, consistent with this Order.

**IT IS FURTHER ORDERED** entering judgment in favor of Valenzuela against Defendants as stated below:

1. On his Arizona Wage Act Claim, Valenzuela shall take judgment against Ruby J. Farms, LLC as follows:
   a. $6,953.97 in unpaid commissions remaining due;
   b. an additional $13,907.94 as treble damages on the unpaid commissions remaining due;
   c. an additional $48,100.00 as treble damages on the $24,050 in commissions withheld in bad faith until May 2022;
   d. pre-judgment interest of 10% per annum on the unpaid commissions remaining due from September 20, 2021 to the date of entry of final judgment; and
   e. post-judgment interest on all amounts awarded.

2. On his Minimum Wage Claim, Valenzuela shall take judgment against Ruby J. Farms, LLC and Anthony and Norma Comella, husband and wife, as follows:
   a. $6,366.60 in minimum wages due;
   b. an additional $12,733.20 as treble damages;
   c. pre-judgment interest of 10% per annum on the unpaid

      minimum wages from September 20, 2021 to the date

      of entry of final judgment; and

   d. post-judgment interest on all amounts awarded.

  3. On his Fair Labor Standards Act Claim, Valenzuela shall take judgment against Ruby J. Farms, LLC and Anthony and Norma Comella, husband and wife, as follows:

   a. $2,223.45 in overtime compensation due;

   b. an additional $2,223.45 as liquidated damages; and

   c. post-judgment interest on all amounts awarded.

**IT IS FURTHER ORDERED** entering judgment in favor of Ruby J. Farms, LLC against Robert Valenzuela on Ruby J. Farms, LLC's conversion counterclaim in the amount of $15,000.00. This amount is to be offset by Robert Valenzuela's judgment against Ruby J. Farms, LLC for his Arizona Wage Act claim.[5]

**IT IS FURTHER ORDERED** that any motion for an award of attorneys' fees shall be accompanied by an electronic spreadsheet, to be e-mailed to the Court and opposing counsel, containing an itemized statement of legal services with all information required by Local Rule 54.2(e)(1). This spreadsheet shall be organized with rows and columns and shall automatically total the amount of fees requested so as to enable the Court to efficiently review and recompute, if needed, the total amount of any award after disallowing any individual billing entries. This spreadsheet does not relieve the moving party of its burden under Local Rule 54.2(d) to attach all necessary supporting documentation to its memorandum of points and authorities filed in support of its motion. A party opposing a motion for attorneys' fees shall e-mail the Court and opposing counsel a copy of the moving party's spreadsheet adding any objections to each contested billing entry (next to each row, in an additional column) so as to enable the Court to efficiently review the objections and recompute the total amount of any award after disallowing any individual

---

[5] The parties shall request any changes or additions to the entry of judgment as stated in this Order by **October 20, 2023**, after which the Clerk will enter judgment based on this Order.

billing entries. This spreadsheet does not relieve the non-moving party of the requirements of Local Rule 54.2(f) concerning its responsive memorandum.

Dated this 4th day of October, 2023.

*Jennifer Zipps*
Jennifer G. Zipps
United States District Judge